UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JACOB LEROY LUNDY, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> PIERCE COUNTY SHERIFF'S DEPARTMENT, *et al.*, <br><br> Defendants. | Cause No. C22-5405RSL <br><br> ORDER GRANTING IN PART THE PIERCE COUNTY DEFENDANTS' MOTION TO DISMISS |

This matter comes before the Court on the "Pierce County Defendants' Motion to Dismiss Pursuant to FRCP 12(b)(6)." Dkt. # 5. On April 4, 2019, plaintiffs Jacob and Weldon[1] Lundy were apprehended and arrested for alleged probation violations. Pierce County Sheriff's Deputy Luke Baker and his canine partner ("K9 Dan") were assisting the Washington Department of Corrections in the search when they located plaintiffs in a neighbor's garage. Plaintiffs allege that, after they were found, determined to be unarmed, and were attempting to comply with the officers' orders to exit their respective hiding places, Deputy Baker directed K9

---

[1] At various points in their opposition memorandum, plaintiff Weldon Lundy is referred to as "Wendell Lundy." The Court means no disrespect, but uses the name as specified in the docket and the Amended Complaint.

ORDER GRANTING IN PART THE
PIERCE COUNTY DEFENDANTS'
MOTION TO DISMISS - 1

Dan to attack, causing severe injuries, significant pain/suffering, and permanent scarring. They assert excessive force claims under 42 U.S.C. § 1983, negligence claims, and strict liability claims under RCW 16.08.040, against the Pierce County Sheriff's Department, Deputy Baker, and five unnamed employees of the Sheriff's Department, the Washington Department of Corrections, the Federal Drug Enforcement Agency, and/or the U.S. Marshals Service.[2] The Pierce County defendants, Deputy Baker and the Pierce County Sheriff's Department, seek dismissal of all of the claims asserted against them.

The question for the Court on a motion to dismiss is whether the facts alleged in the complaint sufficiently state a "plausible" ground for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In the context of a motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008) (citation omitted). The Court's review is generally limited to the contents of the complaint. *Campanelli v. Bockrath*, 100 F.3d 1476, 1479 (9th Cir. 1996).

> To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." []*Twombly*, 550 U.S. [at 570]. A plausible claim includes "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *U.S. v. Corinthian Colls.*, 655 F.3d 984, 991 (9th Cir. 2011) (quoting

---

[2] Plaintiffs' filed an amended complaint in response to defendants' motion to dismiss, withdrawing their assault and battery claim.

ORDER GRANTING IN PART THE
PIERCE COUNTY DEFENDANTS'
MOTION TO DISMISS - 2

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Under the pleading standards of Rule 8(a)(2), a party must make a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). . . . A complaint "that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Thus, "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

*Benavidez v. Cty. of San Diego*, 993 F.3d 1134, 1144–45 (9th Cir. 2021).[3] If the complaint fails to state a cognizable legal theory or fails to provide sufficient facts to support a claim, dismissal is appropriate. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010).

Having reviewed the memoranda, declarations, and exhibits submitted by the parties[4] and taking the evidence in the light most favorable to plaintiffs, the Court finds as follows:

**A. Excessive Force Claim against Deputy Baker**

To state a claim under 42 U.S.C. § 1983, plaintiffs must allege (a) the violation of a constitutional right and (b) that the alleged deprivation was committed by a person acting under

---

[3] In the pre-*Twombly/Iqbal* era, the Ninth Circuit required "nothing more than a bare allegation that the individual officers' conduct conformed to an official policy, custom, or practice" in order to state a claim of municipal liability." *Whitaker v. Garcetti*, 486 F.3d 572, 581 (9th Cir. 2007), quoting *Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1127 (9th Cir. 2002) (internal quotation marks omitted). The Ninth Circuit has since overruled this lenient standard, however, holding that the heightened pleading standard set forth in *Twombly* and *Iqbal* "applies to *Monell* claims and should govern future pleadings." *AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012).

[4] The Pierce County defendants asserted for the first time in reply that they were entitled to qualified immunity. The Court has not considered that argument.

ORDER GRANTING IN PART THE
PIERCE COUNTY DEFENDANTS'
MOTION TO DISMISS - 3

color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). The Pierce County defendants do not dispute that they were acting under color of state law. Plaintiffs allege that Deputy Baker violated their Fourth Amendment right "to be secure in their persons . . . against unreasonable . . . seizures." When a citizen claims that law enforcement officials have used unreasonable and excessive force in the course of making an arrest or other seizure of their person, the fact finder must examine "whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them." *Graham v. Connor*, 490 U.S. 386, 397 (1989) (internal quotation marks omitted). Making that determination "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 396 (internal quotation marks and citations omitted). Whether a particular use of force is reasonable is judged "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* In making the determination, the Court first considers the severity of the intrusion on the plaintiff's Fourth Amendment rights based on the type and amount of force inflicted. Next, the Court evaluates the countervailing government interest in light of three factors set forth in *Graham*, namely "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." 490 U.S. at 396. Finally, the court balances the intrusion on the plaintiff against the government's need for the use of force. *Espinosa v. City and County of San Francisco*, 598 F.3d 528, 537 (9th Cir. 2010). The "most important [factor] is whether

ORDER GRANTING IN PART THE
PIERCE COUNTY DEFENDANTS'
MOTION TO DISMISS - 4

the suspect posed an immediate threat to the safety of the officers or others." *S.B. v. County of San Diego*, 864 F.3d 1010, 1013 (9th Cir. 2017) (internal quotation omitted).

Taking the allegations of the Amended Complaint as true and construing them in the light most favorable to plaintiffs, they have adequately alleged an excessive force claim against Deputy Baker. Defendants concede that the force applied in this case was significant. They argue, however, that the government interests justified the force that was used. To make this argument, defendants imply (without actually arguing) that escaping from community custody is a "severe" crime, they generally ignore the allegations of the Amended Complaint regarding what was occurring when Deputy Baker ordered K9 Dan to attack, they add facts in order to argue that the deputies faced objective threats to their safety, and they misapply some of the relevant factors.

According to plaintiffs, they had both hidden themselves in their neighbor's garage, Weldon under a truck and Jacob inside a cabinet. The garage was cleared of other persons who were in the area and secured when two deputies and K9 Dan entered. Weldon's hiding place was discovered, and he was ordered to come out from under the truck. He did not respond immediately, so the officers began moving items in the area, exposing Weldon's head and upper torso to their view. He was not armed, made no threatening gestures, and made no further efforts to resist or evade arrest. Weldon began to extricate himself from beneath the truck as directed. Nevertheless, Deputy Baker ordered K9 Dan to attack. Similarly, Jacob was discovered lying horizontally in a cabinet near the truck but did not immediately respond to the deputies. Deputy

ORDER GRANTING IN PART THE
PIERCE COUNTY DEFENDANTS'
MOTION TO DISMISS - 5

Baker opened the doors of the cabinet: Jacob's face and arms were clearly visible, and the two made eye contact. Jacob was not armed, made no threatening gestures, and made no further effort to resist or evade arrest. K9 Dan was permitted to sniff Jacob before Deputy Baker closed the doors and directed K9 Dan to "get him, boy, get him" through a small opening in the cabinet near Jacob's head. The dog bit Jacob's head, piercing his temples and causing him to black out. When he regained consciousness, the dog still had his mouth clamped on Jacob's head. Jacob rolled out of the cabinet, and Deputy Baker repeated his commands to "get him." Jacob tried to protect his head, but the deputies struck his hands away and accused him of resisting. K9 Dan continued to bite Jacob's head, arms, and hands until Deputy Baker pulled him away.

The allegations, taken as true, raise a plausible inference that Deputy Baker used excessive force against plaintiffs. Plaintiffs were suspected of violating a condition of community custody and, by the time they were found, they had put themselves in compromised positions. Plaintiffs were unarmed and posed no immediate threat to the safety of the officers or others. Plaintiffs were not resisting or evading arrest at the time force was used. Other factors that are relevant to the evaluation of a use of force support the same conclusion. "Whether an officer warned a suspect that failure to comply with the officer's commands would result in the use of force is another relevant factor in an excessive force analysis." *S.R. Nehad v. Browder*, 929 F.3d 1125, 1137 (9th Cir. 2019) (citation omitted). While the deputies were not silent in this case, there is no indication that they warned plaintiffs that release of the dog was imminent. "[A]n additional factor that we may consider in our *Graham* analysis is the availability of

ORDER GRANTING IN PART THE
PIERCE COUNTY DEFENDANTS'
MOTION TO DISMISS - 6

alternative methods of capturing or subduing a suspect." *Smith v. City of Hemet*, 394 F.3d 689, 703 (9th Cir. 2005), disapproved of on other grounds by *Lemos v. Cnty. of Sonoma*, 40 F.4th 1002 (9th Cir. 2022).[5] In *Smith*, the Ninth Circuit reversed the trial court's grant of summary judgment, finding that there was evidence in the record from which a reasonable jury could conclude that the officers had a number of other options for taking the suspect into custody that presented a lesser threat of death or serious injury than use of a police dog. Construing the allegations in favor of plaintiffs, this factor, too, would support an inference that excessive force was used.

**B. Excessive Force Claim against Pierce County Sheriff's Department**

A municipality can be sued under § 1983, but "it cannot be held liable unless a municipal policy or custom caused the constitutional injury." *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 166 (1993); *see also Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). "[A] municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691.

"In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official

---

[5] Defendants assert that "[t]he appropriate inquiry is whether or not Deputy Baker acted reasonably, not whether he had less intrusive alternatives available to him." Dkt. # 5 at 11. The two are not antithetical to each other: the availability of other, less intrusive options is simply one factor the jury can consider when determining whether Deputy Baker acted reasonably.

ORDER GRANTING IN PART THE
PIERCE COUNTY DEFENDANTS'
MOTION TO DISMISS - 7

government policy for purposes of § 1983." *Connick v. Thompson*, 563 U.S. 51, 61–62 (2011). Allegations that there was a "policy" to inadequately train based on nothing more than the fact that something bad happened is insufficient under the statute: otherwise municipal liability under § 1983 will collapse into *respondeat superior*. *Id.* at 61 and 70. A plaintiff seeking to hold a municipality liable because it failed to train its employees must allege facts giving rise to a plausible inference that the failure was the result of "deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). "Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *Id.*, at 389.

> "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." [*Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 410 (1997).] Thus, when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program. *Id.*, at 407. The city's "'policy of inaction'" in light of notice that its program will cause constitutional violations "is the functional equivalent of a decision by the city itself to violate the Constitution." *Canton*, 489 U.S. at 395 (O'Connor, J., concurring in part and dissenting in part). A less stringent standard of fault for a failure-to-train claim "would result in *de facto respondeat superior* liability on municipalities ...." *Id.*, at 392; *see also Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986) (opinion of Brennan, J.) ("[M]unicipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by [the relevant] officials ... ").

ORDER GRANTING IN PART THE
PIERCE COUNTY DEFENDANTS'
MOTION TO DISMISS - 8

> A pattern of similar constitutional violations by untrained employees is "ordinarily necessary" to demonstrate deliberate indifference for purposes of failure to train. *Bryan Cty*., 520 U.S, at 409. Policymakers' "continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the 'deliberate indifference'—necessary to trigger municipal liability." *Id*., at 407. Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights.

*Connick*, 563 U.S. at 61–62.

It may, however, be the case that, "in light of the duties assigned to specific officers or employees[,] the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need" and "the failure to provide proper training may fairly be said to represent a policy for which the city is responsible . . . ." *Canton*, 489 U.S. at 390. As an example of this sort of single-incident liability, the Supreme Court posited that if "city policymakers know to a moral certainty that their police officers will be required to arrest fleeing felons" and it gives its officers firearms to assist in accomplishing that task, "the need to train officers in the constitutional limitations on the use of deadly force . . . can be said to be 'so obvious,' that failure to do so could properly be characterized as 'deliberate indifference' to constitutional rights. *Id.* at 390, n.10 (internal citation omitted).

Plaintiffs allege that the Pierce County Sheriff's Department is liable for their injuries because there was a pattern of similar conduct on the part of officers, deputies, or administrative

ORDER GRANTING IN PART THE
PIERCE COUNTY DEFENDANTS'
MOTION TO DISMISS - 9

staff that was effectively ratified by supervising officers (Dkt. # 10 at ¶ 3.5) and/or because the need for training regarding K9 engagement was obvious and the Sheriff's Department was negligent or grossly negligent in its supervision, training, and monitoring of the K9 units to prevent the excessive force used against Weldon and Jacob in this case (Dkt. # 10 at ¶ 3.6). The first allegation is entirely conclusory and little more than a recitation of relevant case law. No examples of similar conduct are provided, nor are there any details regarding a policymaker's knowledge and ratification of unconstitutional conduct. The second allegation is not only conclusory, but, even if it were deemed an allegation of fact and presumed to be true, neither negligence nor gross negligence is sufficient to establish a § 1983 claim. "It is now clear that such tortious conduct, when proved, may well result in some state law remedy, but gross negligence, in and of itself, is not unconstitutional." *L.W. v. Grubbs*, 92 F.3d 894, 899 (9th Cir. 1996). In short, plaintiffs allege nothing more than that an officer violated their constitutional rights and that his conduct must have been the result of inadequate training. To allow the claim to proceed would effectively collapse § 1983 municipal liability into respondeat superior liability. Plaintiffs have not adequately alleged a viable § 1983 claim against the Pierce County Sheriff's Department.[6]

---

[6] Plaintiffs argue that simply "enunciat[ing] the failure to train . . . K9 handlers with respect to situations[s] such as the Lundy matter" should be sufficient at this stage of the proceeding because they have not yet had an opportunity to take discovery regarding K9 training protocols and the persons responsible for K9 training. But a complaint that fails to raise a plausible inference that plaintiffs are entitled to relief is deficient under Rule 8 and cannot create an entitlement to discovery. *Iqbal*, 556 U.S. at 686.

ORDER GRANTING IN PART THE
PIERCE COUNTY DEFENDANTS'
MOTION TO DISMISS - 10

**C. Substantive Due Process Claim**

Plaintiffs also assert a § 1983 claim based on alleged violations of the substantive due process rights guaranteed by the Fourteenth Amendment. The claim is based on the same actions and conduct which gave rise to the Fourth Amendment claim and, under Supreme Court precedent, cannot proceed.

> Because we have "always been reluctant to expand the concept of substantive due process," *Collins v. Harker Heights*, [503 U.S. 115, 125 (1992)], we held in *Graham v. Connor*, 490 U.S. 386 (1989), that "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (plurality opinion of REHNQUIST, C.J.) (quoting *Graham v. Connor*, supra, at 395) (internal quotation marks omitted).

*Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998). Where, as here, a constitutional claim is covered by a more specific constitutional provision, such as the Fourth Amendment, resort to substantive due process is inappropriate. *Id.* at 843. Plaintiffs' Fourteenth Amendment claim is therefore DISMISSED.

**D. Negligence Claim against Deputy Baker**

Plaintiffs allege that Deputy Baker had a duty to restrain and prevent K9 Dan from attacking when each plaintiff had already been located, was unarmed, was not threatening the officers or others, and presented no further flight risk, that he breached that duty, and that plaintiffs were thereby harmed. Defendants do not address this claim in their motion other than to acknowledge its existence in their "brief summary of the causes of action" (Dkt. # 5 at 2-3)

ORDER GRANTING IN PART THE
PIERCE COUNTY DEFENDANTS'
MOTION TO DISMISS - 11

and to conclude that the negligence claim against the deputy "should be dismissed for failure to state a claim and meet the requisite requirements, additionally, this count is merely cumulative of" the excessive force claim (Dkt. # 5 at 15). The claim is not discussed at all in the reply memorandum. Defendants have not shown that the negligence allegations are insufficient or otherwise impermissible under Washington law.

**E. Negligence Claims against the Pierce County Sheriff's Department**

Plaintiffs allege that the Pierce County Sheriff's Department has direct supervisory responsibilities over Deputy Baker, that it had a duty to train its K9 handlers and to supervise their use of force, that it breached those duties, and that plaintiffs were harmed thereby. Plaintiffs do not allege that the Pierce County Sheriff's Department is liable by dint of being Deputy Baker's employer, but rather that the Department's own actions in failing to train K9 handlers, failing to require accurate use of force reports, and/or failing to adequately review the use of force reports provided breached a duty owed to plaintiffs. Defendants suggest that the defects which warrant dismissal of plaintiffs' *Monell* claims are fatal to the negligence claim (Dkt. # 5 at 15), but a *Monell* claim requires the allegation of facts giving rise to a plausible inference of deliberate indifference, whereas a negligence claim requires only a duty and its breach. Defendants have not shown that dismissal of the negligence claim is warranted.

**F. Strict Liability Under RCW 16.08.040**

Washington law makes the owner of any dog that bites another person liable for any damages suffered as a result. RCW 16.08.040. If a dog is used by a law enforcement agency

ORDER GRANTING IN PART THE
PIERCE COUNTY DEFENDANTS'
MOTION TO DISMISS - 12

under the control of a dog handler, however, the handler is immune from suit for damages as long as the dog was used in good faith. RCW 4.24.410. Plaintiffs specifically allege that Deputy Baker did not use K9 Dan in good faith.

Defendants' sole argument with regards to this claim is that if the Court finds that Deputy Baker's use of force was reasonable under the Fourth Amendment, good faith is established and the strict liability claim must be dismissed. Dkt. # 5 at 12. Plaintiffs have adequately alleged a violation of the Fourth Amendment against Deputy Baker, however. Defendants have not shown that they are entitled to dismissal of the strict liability claim.

For all of the foregoing reasons, defendants' motion to dismiss (Dkt. # 5) is GRANTED in part and DENIED in part. Plaintiffs' Fourth Amendment claims against the Pierce County Sheriff's Department and their Fourteenth Amendment claims against Deputy Baker and the Pierce County Sheriff's Department are DISMISSED. All other claims may proceed.

Dated this 27th day of February, 2023.

Robert S. Lasnik
United States District Judge

ORDER GRANTING IN PART THE
PIERCE COUNTY DEFENDANTS'
MOTION TO DISMISS - 13